IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02772-MSK

AMERICAN FAMILY MUTUAL INSURANCE CO.,

       Plaintiff,

v.

BARRRY G. GUSTAFSON,

       Defendant.

_____

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Plaintiff American Family Mutual Ins. Co.'s ("American Family") Motion for Summary Judgment **(# 144)**, Mr. Gustafson's response **(# 156)**, and American Family's reply **(# 159)**; and Mr. Gustafson's Motion for Summary Judgment **(# 145)**, American Family's response **(# 155)**, and Mr. Gustafson's reply **(# 160)**.[1]

## FACTS

The Court summarizes the essential facts here and elaborates as necessary in its analysis.

Mr. Gustafson is an insurance broker, and until 2008, was an agent of American Family. Over the span of his affiliation with American Family, Mr. Gustafson signed multiple Career

---

[1] Also pending is Mr. Gustafson's Objections **(# 131)** to the Magistrate Judge's March 2, 2010 Minute Order **(# 129)** granting American Family's Motion for a Protective Order **(# 113)**. Given the disposition of this case as set forth herein, these Objections are denied as moot.

Agent's Agreements, which included provisions limiting Mr. Gustafson's ability, for one year after his departure from American Family, to compete with American Family for insurance business. As part of his work with American Family, Mr. Gustafson was given access to American Family's customer database, known as "ADS."

In July 2008, Mr. Gustafson resigned from American Family and opened up his own independent insurance agency. American Family contends that, immediately prior to his resignation, Mr. Gustafson accessed the ADS system to obtain lists of his current and lapsed clients, and that Mr. Gustafson proceeded to solicit those clients to purchase non-American Family policies from his new agency.

Based on these facts, American Family asserts **(# 163)** four claims[2] against Mr. Gustafson: (i) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, in that Mr. Gustafson accessing of the ADS system was unauthorized; (ii) misappropriation of trade secrets – *i.e.* the customer information contained in the ADS system – in violation of Colorado's Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq.*, (iii) breach of contract, which American Family claims is governed by Wisconsin law, in that Mr. Gustafson's solicitation of his former customers violated the terms of the Career Agent's Agreement; and (iv) tortious interference with contract under Colorado law, in that Mr. Gustafson improperly interfered with contracts between American Family and its customers.

In response, Mr. Gustafson asserted counterclaims **(# 72)** against American Family. Mr. Gustafson contends that he purchased and maintained a business owner's insurance policy from

---

[2]American Family asserted a fifth claim, sounding in violation of the Colorado Consumer Protection Act, but the Court granted **(# 162)** leave to American Family to drop that claim via amendment, and American Family has done so **(# 163)**.

2

American Family, covering his insurance business. Mr. Gustafson contends that American Family's previously-asserted Colorado Consumer Protection Act claim asserted that Mr. Gustafson had engaged in deceptive trade practices by continuing to display a sign advertising his affiliation with American Family. Mr. Gustafson argues that this claim was a claim against him for "advertising injury," a specific type of injury covered by his business owner's policy, and thus, that American Family had a duty to defend and indemnify him on the Consumer Protection Act claim. Mr. Gustafson made a formal request to American Family for defense and indemnification on this claim, and American Family refused. As a result, Mr. Gustafson asserts the following counterclaims: (i) a request for a declaratory judgment that Mr. Gustafson and his agency are insureds under the business owner's policy, that the Consumer Protection Act claim is covered by that policy, and thus, that American Family has a duty to defend and indemnify Mr. Gustafson under that policy; (ii) breach of contract, in that American Family breached the contract of insurance it had with Mr. Gustafson; (iii) bad faith breach of insurance contract, based on the same facts; (iv) violation of C.R.S. § 10-3-1115, which requires prompt payment of insurance claims, the violation of which entitles Mr. Gustafson to actual and liquidated damages under C.R.S. § 10-3-1116; (v) a claim that the Court understands to be one for promissory estoppel, in that American Family should be precluded from claiming that the policy does not extend to Mr. Gustafson's agency, insofar as American Family previously paid claims submitted by Mr. Gustafson's agency and that Mr. Gustafson relied on the understanding that the policy covered the agency's operations; and (vi) a claim for common-law abuse of process, in that American Family commenced this action for an improper purpose – namely, to "harass and disrupt [Mr. Gustafson] in the conduct of his business."

Both sides have filed motions for summary judgment. American Family's motion **(# 144)** seeks summary judgment on each of Mr. Gustafson's counterclaims. Mr. Gustafson's motion **(# 145)** seeks summary judgment on each of American Family's claims. The Court will discuss the particular arguments raised by each party as part of its analysis of the motions.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof, and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one

does not require the grant of another").

### B. Mr. Gustafson's motion

The Court turns first to Mr. Gustafson's request for summary judgment on each of American Family's claims. The Court will address each claim in turn.

#### 1. Computer Fraud and Abuse Act

American Family's claim under the Computer Fraud and Abuse Act 18 U.S.C. §1030(a)(4), which provides that "whoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, shall have violated the Act.[3] 18 U.S.C. § 1030(g) authorizes a civil action by "any person who suffers damage or loss by reason of a violation of this section" to obtain "compensatory damages an injunctive relief."

The elements of a civil claim premised on § 1030(a)(4) are: (i) the defendant accessed a protected computer, (ii) the access was either unauthorized or beyond the scope of access for which the person was authorized, (iii) the defendant accessed the computer with an intent to defraud and in furtherance of a scheme to defraud, and (iv) the defendant "obtained anything of value" as a result. *Triad Consultants, Inc. v. Wiggins*, 249 Fed.Appx. 38, 40 (10th Cir. 2007). In addition, § 1030(g) appears to impose an additional element before civil liability may lie – that the defendant "suffers damage or loss by reason of a violation of this section."

Taken in the light most favorable to American Family, the evidence indicates that on or about July 10, 2008, while still an American Family agent, Mr. Gustafson ran several searches in

---

[3]The Act defines a "protected computer" as one "which is used in or affecting interstate or foreign commerce." 18 U.S.C. § 1030(e)(2). The Court does not understand Mr. Gustafson to dispute that the ADS system would be a "protected computer" under the Act.

the ADS database that were designed to return results containing client names and phone numbers for inactive client accounts between December 1, 2007 and July 10, 2008.  American Family's witness, Wilfredo David, testified that American Family considers that customer information to be "proprietary" and a "trade secret."  American Family does not contend that Mr. Gustafson's actions caused harm to the ADS database, corrupted the data therein, or interrupted the ability of other to use the ADS database during his access.

Mr. Gustafson's first argument is that American Family cannot establish the existence of the element imposed on civil suits by § 1030(g): that American Family suffered "damage or loss" as a result of Mr. Gustafson's conduct.  Mr. Gustafson argues that the terms "damage" and "loss" are specifically defined by § 1030, and preclude a conclusion that competitive business losses suffered as the result of a taking of customer information does not fall within the definition of either term.  The term "loss" is defined in 18 U.S.C. § 1030(e)(11) to be "any reasonable cost to any victim, including the costs of responding to an offense, conducting a damages assessment and restoring the [ ] system . . . to its condition prior to the offense, any revenue lost, cost incurred, or other consequential damages."  Mr. Gustafson argues that several courts have refused to construe the term "loss" to include lost revenue or profits resulting from a competitor making use of misappropriated information. *Citing Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intl., Inc.*, 616 F.Supp.2d 805-812-13 (N.D. Ill. 2009) *and American Family Mut. Ins. Co. v. Rickman*, 554 F.Supp2d 766, 770-72 (N.D. Oh. 2008).

American Family argues, in opposition, that other courts have found that "the loss of confidential and proprietary electronic information constitutes damage or loss" under the Act. *Citing Resource Ctr. for Indep. Living, Inc.  v. Ability Resources, Inc.*, 534 F.Supp.2d 1204,

7

1210-11 (D. Kan. 2008) *and Pacific Aerospace & Elec., Inc. v. Taylor*, 295 F.Supp.2d 1188, 1195 (E.D. Wa. 2003).

There appears to be no general consensus among courts as to whether the term "loss" as used in § 1030(g) and defined in § 1030(e)(11) encompasses revenue losses sustained by a business resulting from the use of information obtained through unauthorized use. Cases that read the statute narrowly, like those cited by Mr. Gustafson or *CoStar Realty Information, Inc. v. Field*, ___ F.Supp.2d ___, 2010 WL 3369349 * 13-14 (D. Md. Aug. 23, 2010), read the definition of "loss" to be limited to losses "connected to an interruption of service" and attempt to restrict the reach of the statute to "the traditional computer hacker scenario – where the hacker deletes information, infects computers, or crashes networks." The other line of cases, cited by American Family, such as *Pacific Aerospace*, read the term broadly, seeking to effectuate what they see as Congress' "inten[t] to expand the statute's scope to include civil claims challenging the unauthorized removal of information or programs from a company's computer database." 295 F.Supp.2d at 1196.

This Court declines to blindly follow either line of conflicting authority. Rather than attempt to divine Congressional intent, as many of these cases purport to do, this Court follows the time-honored approach to statutory construction that directs that the Court first attempt to apply the unambiguous language of the statute. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450 (2002). Here, § 1030(g) requires a civil plaintiff to show a "loss . . . by reason of a violation of this section." The statute provides an express definition for the term "loss" under § 1030(e)(11). That definition is clear and unambiguous. It defines "loss" by means of two phrases: (i) "any reasonable cost to any victim," which is illustrated by examples "including the cost of

responding to an offense, [the cost of] conducting a damage assessment, and [the cost of] restoring the data . . . . to its condition prior to the offense"; and (ii) an expansive category of injuries that are "incurred because of interruption of service."

Turning to the first phrase, the key word is "cost." Whether one consults legal or common dictionaries, the term "cost" has a clear definition: "the amount paid or charged for something." Black's Law Dictionary, 7th Ed. at 349; Merriam-Webster's Collegiate Dictionary, 10th Ed. at 262. This definition is confirmed by the examples given by Congress within the definition – "responding to an offense," "conducting a damage assessment," and "restoring the data" are all activities that will cause the victim to incur actual charges or expenses when performing the listed acts. This portion of the definition clearly and unambiguously deems a "loss" to exist where the victim of the unauthorized access incurs particular charges or expenses as a result of the unauthorized access.

The second phrase is expansive in its first part, applying to "any revenue lost, cost incurred, or other consequential damages," but limits this by requiring that any such injuries be "incurred because of interruption of service." Thus, to fall within this phrase, the loss must have been occasioned by an interruption of computer services due to unauthorized use, but nearly any injury that can be traceable to such an interruption will fall within this term.

Neither portion of the definition is susceptible to an interpretation that would include lost revenue resulting from the dissemination of the computer information to a competitor. Lost revenue is not a "cost" – that is, a sum that is paid to or charged by another – nor is it "incurred because of an interruption of service." It is a separate and distinct kind of injury that exists outside of the two categories of things that Congress has identified as "loss[es]" under

9

§1030(e)(11). American Family does not contend that it is relying on any other "loss" besides its revenues lost through competition with Mr. Gustafson, and thus, the Court concludes that American Family has not shown that it suffered a "loss" as required for civil liability under § 1030(g). Mr. Gustafson is thus entitled to summary judgment on this claim.

    2. <u>Misappropriation of trade secrets</u>

Colorado's Uniform Trade Secrets Act provides for awards of damages, C.R.S.§ 7-74-104(1), and injunctive relief, C.R.S. § 7-74-103, for "misappropriation" of "trade secrets."

A "trade secret" is statutorily defined broadly, but includes "any . . . confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7-74-102(4). To be entitled to trade secret protection for the information, "the owner must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto." *Id.*

"Misappropriation" of a trade secret is a concept with a multi-layered definition, but, for purposes of this action, it most appropriate definition is "disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that such person's knowledge of the trade secret was derived from a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." C.R.S. § 7-74-102(2)(b)(II)(C).

Mr. Gustafson argues that American Family cannot show: (i) the customer information he obtained is a "trade secret," and (ii) that Mr. Gustafson "misappropriated" – that is, "disclose[d] or use[d]" any trade secrets he possessed. The Court need not address the first contention, as it

10

finds merit in Mr. Gustafson's second argument.

In response to Mr. Gustafson's contention that American Family cannot demonstrate his "disclos[ure] or use" of the customer information, American Family points only to evidence that Mr. Gustafson conducted a series of searches for customer information in the ADS database. American Family contends that the searches were "too broad to be used for legitimate marketing efforts" while Mr. Gustafson remained an American Family agent, and thus "the breadth and content of these searches demonstrates an intention to use that information to induce American Family customers to leave American Family." American Family does not point to any evidence specifically demonstrating Mr. Gustafson's use of the customer information he obtained; it only points to the fact that "in the months after [Mr.] Gustafson's resignation, American Family policyholders cancelled several hundred American Family policies to purchase insurance through advantage insurance" and that "the cancellations began immediately after [Mr. Gustafson] resigned from American Family."

American Family's showing is insufficient to carry its burden of demonstrating Mr. Gustafson's actual use of the customer information he obtained. American Family points to no affirmative evidence of Mr. Gustafson using the customer information, and its suggestion that the cancellation of American Family policies by customers after Mr. Gustafson's departure is proof that Mr. Gustafson made use of the customer information he obtained is a classic example of the *post hoc* fallacy. Although it is conceivable that the customers cancelled their policies because Mr. Gustafson used the customer information to solicit them to do so, it is also conceivable that the customers initiated contact with Mr. Gustafson and their decision to switch insurance providers had no connection to Mr. Gustafson soliciting them to do so (*e.g.* they

learned about the change in his business and called to wish him well or to determine whether he was offering different or more competitive products than he previously had, they switched out of a personal loyalty to him, pockets of local anti-American Family sentiment had developed, etc.) Without some affirmative evidence of Mr. Gustafson making actual use of the customer information (or, at the very least, evidence strongly refuting all plausible alternative explanations for the customer switches), the mere fact of customers left American Family is not proof that Mr. Gustafson "disclose[d] or use[d]" the customer information he took. Because American Family has offered nothing more than speculation that Mr. Gustafson made use of the customer information, it has failed to carry its burden of showing "misappropriation" as that term is defined by C.R.S. § 7-74-102, and Mr. Gustafson is entitled to summary judgment on the trade secret claim.

### 3. Breach of contract

American Family contends that Mr. Gustafson's operation of competing insurance business violates a covenant not to compete in the Career Agent's Agreement. Mr. Gustafson contends that the covenant not to compete is not enforceable in Colorado pursuant to C.R.S. § 8-2-113(2), and further, that there is no evidence in the record that he solicited American Family's clients in violation of the covenant.

Although the Court finds the choice of law issue intellectually interesting, efficiency dictates that the Court instead resolve this issue on the basis of Mr. Gustafson's second argument: that American Family cannot demonstrate that Mr. Gustafson violated the terms of the Career Agent's Agreement.

The covenant not to compete is contained in section 6(k) of the Agreement. It states:

> For a period of one year following termination of this agreement, neither the Agent nor [the Agent's representatives] will either personally or through any other person [or] agency . . . directly or indirectly induce [or] assist anyone else in inducing . . . any policyholder of [American Family] . . . to laps, cancel, replace or surrender any insurance policy in force with American Family.

American Family argues that "the term 'induce' is broader than 'solicit'," and that Mr. Gustafson "could have induced his former policyholders to leave American Family even if they initiated the contact." But this argument is at odds with the position taken by Scott Zurfluh, a representative of American Family, identified by the company under Fed. R. Civ. P. 30(b)(6) as "the person who's most knowledgeable regarding the contracts that Mr. Gustafson entered into."

Mr. Zurfluh testified at a deposition that section 6(k) of the Agreement requires that a former American Family agent "should not personally contact American family policyholders to solicit them or attempt to get them to terminate their policies with American Family." Mr. Gustafson's counsel inquired of Mr. Zurfluh whether this section "would preclude a terminated agent from responding to an insured?"; in other words "if an insured came to the terminated agent and requested a quote . . . does American Family believe that paragraph K precludes them from providing that quote." Mr. Zurfluh responded, "no." Mr. Gustafson's counsel then asked whether, in that scenario, "the insured then elects to terminate their insurance with American family and move insurance to the former agent, that's not a violation of paragraph K either, is it?," to which Mr. Zurfluh responded, "No. That would be the policyholder's . . . choice." Thus, by American Family's own admission, section 6(k) did not preclude Mr. Gustafson from responding with a quote for competing insurance if an American Family policyholder initiated contact with him and requested it, and, if that policyholder concluded that another insurance product was more favorable, Mr. Gustafson was not prohibited from complying with the client's

13

request to switch products.

In asserting that Mr. Gustafson breached section 6(k), American Family again relies primarily upon the circumstantial evidence of temporal correlation – that many American Family policyholders cancelled their policies in the months after Mr. Gustafson's departure. As discussed above, the Court finds this evidence insufficient to establish that Mr. Gustafson "solicited" those individuals. As that term is interpreted by American Family through Mr. Zurfluh, this evidence is also insufficient to demonstrate that Mr. Gustafson "induced" any of these customers to change policies; Mr. Zurfluh acknowledges that Mr. Gustafson could, without running afoul of section 6(k), respond to requests for competing quotes initiated by American Family customers and assist the customer with changing policies, if the customer chose to do so.

American Family offers evidence of one – and only one – instance in which it contends that it can show that Mr. Gustafson "induced" a customer to change policies. American Family contends that it asked its former customer, Deborah Buehler, to sign an affidavit concerning the circumstances under which she cancelled her American Family policy. Ms. Buehler responded with "corrections to affidavit that will need to be made before affidavit is signed." The contents of the affidavit American Family asked Ms. Buehler to sign are not part of the record in this case, but a document from Ms. Buehler setting forth her corrections illuminate certain issues. Her proposed corrections include statements that:

> • "The only reason [Mr. Gustafson] came by my office was to assure me that my files and personal information would be kept confidential when he left American Family."
>
> • "He said 'things' were going to hit the fan. No surprise there, [Mr. Gustafson] has been with American Family for many years and had a very large agency."

14

> • Ms. Buehler apparently sought a quote from one of Mr. Gustafson's employees, but "did not receive a 'timely' response." Instead, Ms. Buehler explains, "when we spoke later, socially, she [presumably an employee of Mr. Gustafson] indicated they were back logged with so many new policies and to please be patient. We played email tag a few times after that over insurance quotes but by then I was settled with my new agent."
>
> • "[Mr. Gustafson] never said he could save 'me' money. He has mentioned that he has been able to save some people money on insurance premiums."
>
> • Most significantly, Ms. Buehler stated that "You [American Family] failed to mention [in the draft affidavit] that [Mr. Gustafson] has NEVER solicited me for insurance. I said that many times in our conversation I am surprised it was left [out] of your summary."

American Family argues that "Ms. Buehler denied that [Mr.] Gustafson ever 'solicited' her to buy insurance from his new agency, but it is clear that he induced her to do so." American Family points out that "[Mr. Gustafson] has spoken to her and told her that he had been able to 'save some people money on insurance premiums.'" American Family argues that "this is a clear attempt to induce Ms. Buehler to switch from American Family to his new agency," and thus, a violation of section 6(k) of the Agreement.

The Court finds that American Family has overstated the significance of Ms. Buehler's statements. Assuming the Court would treat Ms. Buehler's unsigned, unsworn letter as the equivalent of an affidavit – and the Court has some doubts that it should do so – at best, the letter establishes that: (i) Mr. Gustafson initiated a contact with Ms. Buehler in order to assure her that his departure from American Family would not compromise her privacy; (ii) that, at an unknown point in time an in an unknown context, Mr. Gustafson stated to Ms. Buehler that "he has been able to ave some people money on insurance premiums"; (iii) that Ms. Buehler and a person who

appears to be an employee of Mr. Gustafson "played email tag a few times . . . over insurance quotes"; (iv) that Ms. Buehler eventually found a new insurance agent who, presumably, assisted her in cancelling an American Family policy; and (v) that Ms. Buehler vehemently insists that Mr. Gustafson "never solicited me for insurance." Taking each statement individually, statement (i) is not susceptible to an interpretation that could constitute Mr. Gustafson "inducing" Ms. Buehler to leave American Family, as the statement has nothing to do with Ms. Buehler obtaining new insurance. Skipping over statement (ii) for the moment, statement (iii) indicates only that Mr. Gustafson provided Ms. Buehler with insurance quotes, an action that, absent any other information, falls within Mr. Zurfluh's admission that a former agent providing American Family customers with insurance quotes at their request would not constitute a violation of section 6(k). Statement (iv) casts some doubt on the notion that Mr. Gustafson would have "induced" Ms. Buehler to leave American Family, as it appears that Ms. Buehler's decision to leave American family was prompted by obtaining insurance coverage from an agent other than Mr. Gustafson. Statement (v), which admittedly uses the word "solicited" instead of the word "induced," nevertheless seems to convey a passionate belief of Ms. Buehler that Mr. Gustafson was not attempting to win away her business.[4]

That leaves statement (ii) as the only possible statement that could even arguably constitute Mr. Gustafson "inducing" her to leave American Family. But that statement, devoid of context or elaboration, offers little assistance to American Family. It is entirely unclear what prompted Mr. Gustafson to tell Ms. Buehler that he "has been able to save some people money"

---

[4]At best, the statement is neutral as far as American Family's position goes, shedding no light on whether Mr. Gustafson "induced" her to leave American Family or not.

on insurance, or when and under what circumstances Mr. Gustafson made this remark. The Court can conceive of any number of hypothetical conversations between Mr. Gustafson and Ms. Buehler in which this remark could not reasonably be construed as Mr. Gustafson "inducing" Ms. Buehler to leave American Family.[5] The lack of context for this statement is especially curious in light of the fact that American Family had the opportunity to talk with Ms. Buehler and ascertain her recollection of the circumstances under which Mr. Gustafson made the remark. One might assume that American Family's failure to elaborate on the context of this remark reflects the fact that it does not persuasively advance American Family's argument. In any event, this single statement, devoid of context, is insufficient to carry American Family's burden of demonstrating that Mr. Gustafson "induced" – as Mr. Zurfluh constrained that term –

---

[5]For example:

Ms. Buehler: I see you have a new agency. What would you recommend I do with my current insurance?
Mr. Gustafson: Well, I have been able to save some people money with new policies, but your American Family policy is pretty competitive with the current premiums in the market.
Ms. Buehler: Well, send me some alternative quotes anyway.

\*\*\*\*

Ms. Buehler: How is your new business? Is working for yourself enjoyable?
Mr. Gustafson: Well, I have been able to save some people money, so that feels good.

\*\*\*\*

Ms. Buehler: I haven't seen you since you went out on your own many months ago. I wanted to tell you that my new insurance broker talked me out of that American Family policy you had sold me many years ago. I hope you've been as helpful to your clients as my new broker was to me.
Mr. Gustafson: Well, I have been able to save some people money.

American Family customers to cancel their policies.

Under these circumstances, even assuming that section 6(k) was an enforceable covenant not to compete, American Family has not come forward with evidence to establish that Mr. Gustafson's actions constituted a violation of that clause. Mr. Gustafson is thus entitled to summary judgment on the breach of contract claim.

### 4. Tortious interference with contract

To establish a claim for tortious interference with contract, American Family must show: (i) Mr. Gustafson interfered with a contract that existed between American Family and a third party, causing the third party not to perform the contract; (ii) Mr. Gustafson's interference was improper; and (iii) Mr. Gustafson did so intentionally. *Memorial Gardens, Inc. v. Olympian Sales and Management Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984). Mr. Gustafson challenges American Family's ability to demonstrate both that he interfered with American Family's contracts with its customers, and that such interference was improper.

Extended discussion of this issue is not necessary. American Family's response to Mr. Gustafson's motion essentially reincorporates the same allegations discussed above, and is insufficient for the same reasons previously addressed. The crux of American Family's offer of proof on this point is that "It is beyond coincidence that so many policyholders left American family in such a short time to switch to [Mr. Gustafson's agency]." That customers may have left American Family for Mr. Gustafson's agency, or even that they did so in large numbers, does not suffice to prove that Mr. Gustafson interfered with American Family's contracts, nor

that he did so improperly.[6] Accordingly, Mr. Gustafson is entitled to summary judgment on this claim as well.

For the reasons stated above, Mr. Gustafson is entitled to summary judgment on all of American Family's claims.

### C. American Family's motion

American Family moves for summary judgment on each of Mr. Gustafson's counterclaims. As discussed above, five of those counterclaims grew out of Mr. Gustafson's contention that he was entitled to a defense and indemnification by American Family on American Family's claim against him under the Colorado Consumer Protection Act, and a final claim asserting common-law malicious prosecution.

After Mr. Gustafson filed his Answer and Counterclaims, American Family moved **(# 106)** to amend its complaint to omit the Consumer Protection Act claim. Mr. Gustafson opposed **(# 110)** the motion, arguing that his counterclaims were "predicated on the CCPA claim that [American Family] now seeks to eliminate." Over Mr. Gustafson's opposition, the Magistrate Judge recommended **(# 111)** that American Family's motion be granted. After the parties completed briefing of the instant motions, the Court adopted **(# 162)** the recommendation and granted American Family's request to amend the complaint to omit the Consumer Protection

---

[6]The Court assumes that the policies cancelled by the customers – allegedly at Mr. Gustafson's urging – were contracts terminable at will by either American Family or the customers. In such circumstances, the scope of protection offered to American Family against competition from Mr. Gustafson is fairly limited, and American Family must show that Mr. Gustafson "employed wrongful means" to accomplish the interference. *Memorial Gardens*, 690 P.2d at 210-11. Given the Court's findings above – that American Family has not come forward with evidence that Mr. Gustafson actually made any use of the customer information he allegedly retained or that he induced customers to cancel their policies, American Family cannot establish the tortious interference claim in any event.

Act claim.

As a result, American Family filed an Amended Complaint **(# 163)**, to which Mr. Gustafson filed an Answer **(# 164)**. Unlike his previous Answers, the most recent iteration does not contain any counterclaims against American Family. The Court assumes this represents Mr. Gustafson's intentional dismissal of the counterclaims, in that he acknowledged that most of those counterclaims were "predicated" upon a claim by American Family that was no longer being asserted. Accordingly, because Mr. Gustafson has dismissed all of his counterclaims, American Family's motion for summary judgment on those counterclaims is denied as moot.

## CONCLUSION

For the foregoing reasons, American Family's Motion for Summary Judgment **(# 144)** is **DENIED AS MOOT**. Mr. Gustafson's Motion for Summary Judgment is **GRANTED**, and the Clerk of the Court shall enter judgment in favor of Mr. Gustafson on all claims in this matter and shall thereafter close this case. Given that all claims in this case have been disposed of, Mr. Gustafson's Objections **(# 131)** are **DENIED AS MOOT**.

Dated this 25th day of February, 2011

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

20